J-E03001-14

2015 PA Super 6

| | | |
|---|---|---|
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| BARISHA DILL, | : | |
| | : | |
| Appellant | : | No. 3120 EDA 2012 |

Appeal from the Judgment entered December 19, 2012,
Court of Common Pleas, Philadelphia County,
Civil Division at No. March Term, 2012, 1370

BEFORE:    BENDER, P.J.E., BOWES, PANELLA, DONOHUE, SHOGAN, ALLEN,
LAZARUS, WECHT and STABILE, JJ.

CONCURRING OPINION BY DONOHUE, J.:          **FILED JANUARY 13, 2015**

I join the Majority opinion, as I agree that this Court may not consider claims of error that were not raised before the arbitration tribunal at a time when the errors could have been corrected and any prejudice mitigated. ***Tindall v. Friedman***, 970 A.2d 1159, 1174 (Pa. Super. 2009); ***Donegal Ins. Co. v. Longo***, 610 A.2d 466, 468 (Pa. Super. 1992). For the reasons set forth in the Majority opinion, the Appellant waived the claims now presented on appeal.

I write separately to disavow any suggestion that but for our finding of waiver, I would conclude that the arbitrator selected by State Farm (Kevin McNulty, Esq.) was disqualified to serve as an arbitrator in this case. Pursuant to section 7305 of the Uniform Arbitration Act, if "the agreement to

arbitrate prescribes a method of appointment of arbitrators, the prescribed method will be followed." 42 Pa.C.S.A. § 7305. In this case, the agreement specifies that "each party shall select a **competent** arbitrator," and that these two "shall select a **competent and impartial** third arbitrator." State Farm Mutual Automobile Insurance Policy, at 20 (emphasis added). The issue presented here, then, is one of contract interpretation, namely what constitutes a "competent arbitrator" under this agreement, and how (if any) the description of the neutral third arbitrator as both "competent **and impartial**" shapes this determination. But for the waiver of this issue, this Court would have been tasked to glean the mutual intentions of the parties regarding the phrase "competent arbitrator" to decide whether Attorney McNulty's prior involvement in the third party action disqualified his participation as a "competent arbitrator" in this case.

This issue appears to be one of first impression for Pennsylvania appellate courts. In **Longo**, this Court ruled that an arbitrator's undisclosed attorney-client relationship with one of the parties rendered him unqualified to serve as an arbitrator, but the agreement in that case regarding the selection of arbitrators did not include any of the "competent" and "impartial" language at issue here. **Longo**, 610 A.2d at 467-68 ("[E]ach party will select an arbitrator" and these "two arbitrators will select a third."). In **Sheehan v. Nationwide Ins. Co.**, 779 A.2d 582 (Pa. Super.), *appeal denied*, 792 A.2d 1254 (Pa. 2001), this Court held that the individual

selected to be the third arbitrator was competent to serve in that role even though he had been an associate in a law firm that had represented one of the parties 23 years previously. *Id.* at 585. Again, however, the relevant language in **Sheehan** differed from that presented here, as the agreement there provided only that each party would select "an arbitrator" and that those two would "select a third competent arbitrator." *Id.* at 584.

The contract language in the present case, pursuant to which the parties each selected a "competent arbitrator" and those two arbitrators selected a "competent **and impartial**" third arbitrator, suggests some distinction between competence and impartiality. In other words, the parties here may have agreed that only the third arbitrator (the neutral) needed to be entirely free of any prior associations or other hint of partiality. If so, the competence of the two arbitrators selected by the parties would be judged by some lesser standard (e.g., a more general ability to determine fairly the merits of the controversy before them). I note, for instance, that the Uniform Arbitration Act repeatedly distinguishes between ordinary arbitrators (like McNulty) and those appointed to act as "neutrals." **See, e.g.**, 42 Pa.C.S.A. § 7314(a)(ii) ("[T]he court shall vacate an award where: … there was evident partiality by an arbitrator **appointed as a neutral** or corruption or misconduct in any of the arbitrators prejudicing the rights of any party.") (emphasis added); *id.* at § 7307(a)(5) ("If, during the course of the hearing, an arbitrator for any reason ceases to act, the remaining

arbitrator or arbitrators **appointed to act as neutrals** may continue with the hearing and determine the controversy.") (emphasis added).

Because the issue presented is one of contract interpretation, I disagree with the view of the Dissent that Rule 1302 of the Pennsylvania Rules of Civil Procedure has any application here. Per Rule 1301 and 42 Pa.C.S.A. § 7361, Rule 1302 governs only in connection with compulsory court arbitration of civil cases below a dollar amount fixed by local rule. Pa.R,C.P. 1301; 42 Pa.C.S.A. § 7361. In compulsory arbitration, by rule (Rule 1302(b)) arbitrators are appointed from a list of members of the bar, and their qualifications are thus also set by rule (Rule 1302(e)). In this case, in significant contrast, the arbitrators were selected in accordance with the agreed-upon terms of the insurance policy (as described hereinabove), and the qualifications of the arbitrators selected must be determined by those same terms. Given that the issue was not preserved for review, the interpretation of the insurance contract must await another case.